UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JACK A. CLAYBORNE,

                Plaintiff,

v.                                             Case No. 22-cv-133-pp

DALE SCHMIDT, SGT. POLSIN, SGT. KUEHL,
SGT. RITER, OFFICER KNOLL, OFFICER HRABAN,
CPT. MARVIN, SGT. SCHWARTZ,
PROGRAM SPECIALIST BUCKNER,
DEPUTY JAIL ADMINISTRATOR BRUGGER,
OFFICER LOHNES, OFFICER DELUISA, OFFICER FONTE,
OFFICER ZINTA, OFFICER HASTINGS, OFFICER COWSER,
OFFICER SCHMIDT, OFFICER CARLTON,
OFFICER BRZECZKOWSKI, JONATHAN WESTBERG,
LT. WILD, LT. ADAMS, LT. GENZ, LT. JAWORSKI,
CAPTAIN SHALLOW, CAPTAIN PALMER, CAPTAIN GABOR,
DEPUTY JAIL ADMINISTRATOR LEWANDOWSKI,
JAIL ADMINISTRATOR WOLLENHAUPT
and ERIC SEVERSON,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3), DENYING AS MOOT PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO PAY INITIAL PARTIAL FILING FEE (DKT. NO. 13) AND ORDERING PLAINTIFF TO FILE AMENDED COMPLAINT**

---

       Jack A. Clayborne, who is incarcerated at the McCreary United States Penitentiary in Pine Knot, Kentucky and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. no. 3, and for an extension of time to pay the initial partial filing fee, dkt. no. 13, and screens the complaint, dkt. no. 1.

1. **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On April 6, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $18.47. Dkt. No. 10. The court granted the plaintiff's request to extend that deadline. Dkt. No. 12. The plaintiff requested a second extension of time to pay the initial partial filing fee. Dkt. No. 13. But on June 13, 2022, the court received the fee. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order. The court will deny the plaintiff's second motion for an extension of time because it is unnecessary.

**II. Screening the Complaint**

A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or

malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

In February 2022, when the plaintiff filed the complaint, he was in custody in the Waukesha County Jail. Dkt. No. 1 at 2.

The complaint is thirty-seven pages long, and it asserts at least thirteen distinct claims against thirty individuals. Dkt. No. 1. The complaint names as defendants Waukesha County Sheriff Eric Severson; Dodge County Sheriff Dale Schmidt; Sergeants Polsin, Kuehl, Riter and Schwartz; Lieutenants Wild, Adams, Genz and Jaworski; Captains Marvin, Shallow, Palmer and Gabor; Officers Knoll, Hraban, Lohnes, Deluisa, Fonte, Zinta, Hastings, Cowser, Schmidt, Carlton and Brzeckzkowski; Program Specialist Buckner; Deputy Jail Administrators Brugger and Lewandowski; CSA/Notary Jonathan Westberg; and Jail Administrator Willenhaupt. Id. at 1–2. The plaintiff has sued the defendants in their individual and official capacities. Id. at 36.

The complaint alleges that on September 22, 2021, the plaintiff was transferred from Dodge County Detention Facility ("Dodge") to Waukesha County Jail ("Waukesha"). Id. at 3. The plaintiff says he believes this was an act of retaliation because he used "the grievance process" at Dodge to complain about his shoulder problems and allege deliberate indifference to his medical needs. Id. He alleges that on April 5, 2021, Officer Knoll wrote him a conduct report for refusing to move to a housing unit where there were several incarcerated persons on the plaintiff's "keep separated" list (someone he'd had

a fight with, someone who'd thrown a chair at him and someone who was a co-defendant in his then-pending federal case). Id. at 3–4. The plaintiff says he explained this to several officers throughout the grievance process, but the officers "supported and endorsed the conduct report and punishment." Id. at 4–5. He also says his food was served cold, and that he filed a grievance about that. Id. at 5. The plaintiff says that at the time he filed the complaint, there were many federal detainees who had been at Dodge longer than he had been and others who'd come later, yet he was singled out to be moved to Waukesha. Id. at 5. He asserts that Schmidt was responsible for his transfer to Waukesha and did so in violation of his First and Fourteenth Amendment rights and state law. Id. at 5–6.

The complaint then lists twelve additional, numbered claims. Id. at 6–23. The court will briefly describe each of those claims for relief:

    1.    The plaintiff alleges that while he was exhausting his administrative remedies for the claims detailed above, he learned through a "Level 1 grievance on 9-25-21" that he'd been placed in the restrictive housing unit because of the charges against him and "a strip being required." Id. at 6-7. He says that he later learned, through a disciplinary appeal, that he had been placed in restrictive housing only because of his "violent incarceration history at other institutions." Id. at 7. The plaintiff says he does not have a violent criminal history, that he had no history at Waukesha and that he had not been in a fight since February 2021, at Dodge. Id. He says he served his time in punitive segregation for that fight and had worked his way back into the

general population ("a Green Shirt") seven months before he was transferred to Waukesha. Id. at 7–8. The plaintiff asserts it is "Double Jeopardy to be disciplined again for the same conduct [that he] was disciplined for in the past." Id. at 8.

    2.    The plaintiff asserts that on September 22, 2021, officers unconstitutionally strip-searched him, even though the same day he'd been strip-searched at Dodge prior to being transferred and searched by the U.S. Marshals. Id. at 8-9. He says Lohnes conducted one of the searches while he was in restraints and conducted another once he removed the restraints. Id. at 9. The plaintiff says he explained that while he was being transported from Dodge, he'd been under the direct supervision of officers and the U.S. Marshals, which meant the strip searches at Waukesha were unreasonable and unnecessary. Id. The plaintiff says that he told Lohnes, Deluisa and Wild several times that he would submit to a strip search only if he was shown a policy that said he had to be strip-searched when coming from a different county jail. Id. at 9–10. He says that Wild responded, "I am not going to get you a policy and either you do the search are you are going to be disciplined and you can sue me if I'm violating your rights." Id. at 10. When the plaintiff refused the strip search, he was placed in "red clothing" by Lohnes, Deluisa and Wild "and was told [he] was MV-2 or something for not doing a squat and cough." Id. He says that Deluisa did show him a policy, by taping it to the plaintiff's window "for approximately 30 minutes to taunt [the plaintiff]," and that the plaintiff then complied with the strip search and cough. Id. The

plaintiff says, however, that he learned from Lohnes and Anderson that he'd still be sent to the restricted housing unit "for not squatting and coughing during the first strip search the 1st time." Id. at 10–11. The plaintiff alleges Wild confirmed this when he asked her why he was still in red clothing and going to restricted housing. Id. at 11. The plaintiff says, "And to top it off, A Lady (Lt. Wild) was part of the strip search;" he says there are many males employed at Waukesha and that it was "unnecessary" for Wild to be involved. Id. He says Lewandowski and Wollenhaupt reviewed his grievances about the strip-searches, but that they "supported and endorsed the strip searches with one involving a Lady (Lt. Wild)." Id. at 11–12.

3. The plaintiff asserts that he was placed in restricted housing on September 23, 2021 to punish him for not squatting or coughing, even though after he saw the policy, he had done so. Id. at 12. The plaintiff says that he thinks he was placed in the restricted housing unit as punishment for the fact that he did not squat and cough until after he saw the policy, and that the placement was done "to humiliate, embarrass and harass [him], which is not discipline." Id. He says he was never given a notice of an infraction he committed before being placed in restricted housing, given a formal disciplinary process or given a classification review. Id. at 13. The plaintiff reiterates that he now has additional facts showing that he was placed in restrictive housing due to his "Violent Incarceration History and Violent Criminal History;" he says he does not "completely buy into these reasons" but that he figures he ought to

mention them. Id. The plaintiff says he exhausted his remedies for this, but was told it was not "grievable" and to file a disciplinary appeal. Id. at 13–14.

4. The plaintiff alleges that Waukesha has a policy prohibiting persons in restricted housing from ordering or having someone send them magazines, newspapers or books (although the jail itself has some books). Id. at 14. He grieved this issue, but that jail officials "supported and endorsed their policy of not allowing books to be sent to an inmate, and completely banning magazines and newspapers in restricted housing." Id. at 14–15.

5. The plaintiff alleges that Waukesha has no recreation unit and that "if you get caught exercising in the dayroom, you will be told to stop in Restricted Housing." Id. at 15. The plaintiff says that he made it known through the grievance process that he has heart problems and that a cardiologist has told him he should do cardio at least three times a week. Id. The plaintiff says he grieved this issue, but that officials "supported and endorsed no recreation unit for exercise for Restricted Housing inmates." Id.

6. The plaintiff says that he wanted to file a notice of claim, but that Waukesha does not send mail certified or registered. Id. at 16. He had to send his notice of claims to someone outside of the jail, who could then forward it via certified mail (which he says is required by Wis. Stat. §893.82). Id. The plaintiff asserts that this obstructed his "right to access the Attorney General and thus den[ied his] rights to preserve [his] state tort claims." Id. The plaintiff grieved this issue, but jail officials denied his grievances and "have supported

and endorsed the fact that Waukesha County Jail does not send out mail certified or registered when requested by an inmate." Id. at 16–17.

7. The plaintiff alleges that on November 15, 2021, Fonte opened his legal mail from the court without him present. Id. at 17. The plaintiff grieved this issue, but jail officials "supported and turned a blind-eye to Fonte breaking the law." Id. The plaintiff also alleges that, the same day, Fonte refused to let him take a shower but allowed a white male incarcerated person to use the shower multiple times. Id. The plaintiff asserts that Fonte's decision was in retaliation for him using the grievance process and/or was "racially motivated." Id. at 17–18. The plaintiff also unsuccessfully grieved this issue. Id. at 18.

8. The plaintiff alleges that on November 17, 2021, Zinta and Hastings allowed an incarcerated person named Taylor to use and view the plaintiff's discovery documents. Id. at 18. The plaintiff says that Taylor told the plaintiff that Taylor viewed the discovery given to him by Zinta and Hastings "thinking it was his." Id. Taylor told the plaintiff that Taylor had given the discovery back to Zinta and Hastings once he figured out it wasn't his. Id. at 18–19. The plaintiff grieved this issue, and jail officials responded, "there was nothing indicating the other inmate was allowed to view [his] discovery." Id. at 19.

9. The plaintiff alleges that Waukesha has "an unwritten policy or custom that does[n't] allow [him] to keep grievances and responses but only allows [him] to look at them." Id. Officers have told him he can pay for copies, but he says if he has no money, they won't send him copies. Id. He says that

when he does have the money to pay for copies, he often "go[es] through the runarounds." Id. at 19–20.

10. The plaintiff alleges "many different officers" at Waukesha are retaliating against him for filing grievances and notices of his claims. Id. at 20. He says Cowell "lied on" him and that Cowell and Schmidt wrote false conduct reports against him, and that Carlton and Brzeczkowski refused to provide him cleaning supplies when his toilet flooded. Id. at 20–21. Gabor and Shallow rejected the plaintiff's grievances about these issues. Id. at 21.

11. The plaintiff says that after filing three notice of claim and an amended notice of claim, he discovered that notices of claim must be "sworn to." Id. On December 23, 2021, he "wrote the CSA/Notary" and explained that a claimant needed to take an oath or affirmation under Wis. Stat §893.82(5) and that the notice of claim needed to include a statement showing that the oath or affirmation had occurred. Id. at 21-22. Westberg told the plaintiff he would "only witness the signature and notarize it." Id. at 22. The plaintiff says that because of the 120-day time frame for filing a notice of claim, he had to send all three of the notices and the amended notice "filed improperly." Id. He believes at least one of the notices of claim he filed for something that happened at Dodge might be barred now. Id. He says he is "still grieving this issue" but he included it in his complaint "due to [his] State Tort Claims being irreparably harmed and at risk of being irreparably harmed due to the 120 day strict compliance that [he] need[s] to follow when filing a Notice of Claim." Id. at 22–23.

12. The plaintiff alleges that there are no fire or smoke alarms or sprinklers in the cells at the jail, which he believes is unsafe. Id. at 23. The plaintiff says he is grieving this issue but concedes he has not yet exhausted this issue. Id. Because he believed he was at risk of harm, he though he should notify the court as quickly as possible. Id.

The complaint next summarizes and reiterates the plaintiff's claims. Id. at 23–27. He explains the various restrictions applicable to someone in the restricted housing unit. Id. at 24. He adds that according to the medical/mental health forms, Waukesha charges federal detainees a $25 co-pay for medical services; he asserts that this is excessive because Dodge County Jail charges only $2.50 for medical and nothing for mental health services. Id. at 26. He complaints that he is being charged for over-the-counter medications. Id. He asserts "Nurse Zerbst and Doctor Brown here at Waukesha County Jail are just as bad if not worse then the nurses and doctors at Dodge County Detention Facility," and that all of them had been deliberately indifferent to his medical needs. Id. at 26-27.[1]

The plaintiff seeks unspecified declaratory relief, a temporary restraining order and a temporary or permanent injunction. Id. at 27–28. He seeks injunctive relief ordering jail staff to cease retaliating against him, disciplining him for past misconduct, requiring him to submit to strip-searches and

---

[1] The plaintiff sues Zerbst and Brown, among others, in another of his lawsuits pending before this court, and raises his concerns about co-pays and drug costs in that case. Case No. 22-cv-145-pp. The court has addressed those claims in the screening order for that case. Id. at Dkt. No. 18.

allowing officers of opposite genders to conduct strip-searches; to allow him to receive reading materials in restricted housing, allow restricted housing inmates to visit the recreation room, provide certified or registered mail services to inmates, stop Fonte from opening his legal mail and discriminating against non-white inmates, allow him to keep copies of his grievances and responses, not to allow other inmates to view his discovery, to stop officers from writing false conduct reports, order Westberg properly to notarize his notice of claims, allow him to use a computer to perform his legal work and to install fire alarms or smoke detectors and sprinklers in rooms or cells that do not currently have them. Id. at 28–36. He also seeks $250,000 in monetary damages. Id. at 36–37.

C. Analysis

The court cannot allow the complaint to proceed as written. It raises at least thirteen unrelated claims against thirty defendants. A plaintiff may bring multiple claims against a single defendant in the same case, or a single claim against several defendants in the same case. But a plaintiff cannot bring unrelated claims against different defendants in the same case. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). A plaintiff may sue multiple defendants in a single case only if the plaintiff asserts at least one claim against each defendant that arises out of the same events or incidents and involves questions of law or fact that are common to all the defendants. Fed. R. Civ. P. 20(a)(2); George, 507 F.3d at 607; Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012) (joinder of

multiple defendants in one case "is limited to claims arising from the same transaction or series of related transactions").

The plaintiff's complaint violates Rules 18 and 20 because it alleges several unrelated claims against unrelated defendants. It alleges that officials at Dodge retaliated against him for filing grievances by transferring him to Waukesha and feeding him cold meals. It alleges that some officials at Waukesha unlawfully subjected him to strip searches in retaliation for his filing grievances at a different institution. He alleges that others put him in restricted housing as retaliation for the fact that he demanded to see a policy before submitting to a strip search. He alleges that others denied him reading materials, that others prohibited him from exercising, that others did not provide certified or registered mail, that others forced him to pay an excessive copay for medical treatment and medications, that others forced him to pay for copies of his grievances and responses and much more. Few of these claims have defendants in common and some do not name defendants at all. The alleged events occurred over a four-month span from September to December 2021, and many of the claims share questions of law or fact.

When a complaint violates Rules 18 and 20 by joining unrelated claims against unrelated defendants, the court must address the issue "either by severing the action into separate lawsuits or by dismissing the improperly joined defendants." Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011) (citing Fed. R. Civ. P. 21). The court will not carve the plaintiff's complaint, paragraph by paragraph, into twelve or thirteen (or more) separate lawsuits. The court will

give the plaintiff an opportunity to choose which one of the above-described, unrelated claims he wants to pursue in this case. The court will give the plaintiff a deadline by which to file an amended complaint that focuses on the single claim of his choice. If the court receives an amended complaint by the deadline, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the plaintiff wishes to pursue the other claims, he must do so in separate lawsuits, and must pay a filing fee for each. If the court does not receive an amended complaint consistent with the instructions in this decision, the court will allow the plaintiff to proceed only on his claim alleging that Dodge officials transferred him to Waukesha and provided him cold food in retaliation for using the grievance system at Dodge. See supra at 4–5. The court will enter an order screening that claim and will dismiss all other claims and defendants.

If the plaintiff chooses to file an amended complaint, he should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The plaintiff's amended complaint *should not* be long and it need not contain legal language or citations to statutes or cases. It needs only to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form and instructions. The plaintiff must list the case number for this case on the first

page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claim he wishes to bring, and to describe which defendants he believes committed the violations that relate to his claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to state the single claim on which he is proceeding.

The original complaint's sprawling allegations suggest several possible claims for relief under the First and Fourteenth Amendments and state law. But several of the allegations do not state a claim for relief. For example, the plaintiff says that officers gave his discovery to another incarcerated individual, mistakenly believing it was his. The other incarcerated individual says that he returned the discovery to jail staff once he realized it was not his. These allegations suggest that the officers mistakenly provided the discovery to the wrong person. Accidents and mistakes do not violate an inmate's constitutional rights. See Estelle v. Gamble, 429 U.S. 97, 105 (1976).

The plaintiff names several captains, lieutenants or supervisors and jail administrators whose only involvement appears to have been to review and/or reject his grievances or appeals. But there is no inherent constitutional right to

a jail grievance system. See Owens, 635 F.3d at 953; Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). That means jail officials do not violate an incarcerated person's rights by rejecting "an administrative complaint about a completed act of misconduct." George, 507 F.3d at 609–10; see also Owens, 635 F.3d at 953 ("[T]he alleged mishandling of [an incarcerated person's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim."). Nor do jail officials violate an incarcerated person's constitutional rights by charging a fee for medical services or over-the-counter medications. See Poole v. Isaacs, 703 F.3d 1024, 1026–27 (7th Cir. 2012) (holding that "the imposition of a modest fee for medical services, standing alone, does not violate the Constitution").

The plaintiff concedes that at the time he filed the complaint, he had not exhausted at least two of his claims (his claims about the notary and the fire alarms and sprinklers). Under the PLRA, an incarcerated person cannot bring a suit under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). This requirement applies to *each separate claim* the plaintiff wants to bring in his lawsuit. Henry v. Deshler, No. 20-2185, 2021 WL 2838400, at *2 (7th Cir. July 8, 2021) (citing Schillinger v. Kiley, 954 F.3d 990, 996 (7th Cir. 2020)). That means the plaintiff cannot proceed in this lawsuit on any unexhausted claim, even if he files an amended complaint. The plaintiff must fully exhaust those claims before filing any lawsuit alleging those claims.

16
Case 2:22-cv-00133-PP   Filed 10/31/22   Page 16 of 19   Document 18

Some of the plaintiff's claims allege violations of state law or jail regulations or policies. A violation of state law or jail regulations or policies alone does not state a claim under §1983. Wells v. Caudill, 967 F.3d 598, 602 (7th Cir. 2020) (state law); Pulera v. Sarzant, 966 F.3d 540, 551 (7th Cir. 2020) (jail policies). The plaintiff cannot proceed under §1983 on any claims alleging only a violation of state law or jail policy.

The plaintiff also seeks a dozen forms of injunctive relief against officials from Waukesha and Dodge. But the plaintiff is no longer incarcerated at either of those facilities, and he does not allege that he anticipates he will return there in the future. That means his requests for injunctive relief, including a temporary restraining order, are moot. Maddox v. Love, 655 F.3d 709, 716 (7th Cir. 2011) (concluding that prayer for injunctive relief was moot because plaintiff was transferred to a different facility and failed to allege "a realistic possibility that he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains"); Ortiz v. Downey, 561 F.3d 664, 668 (7th Cir. 2009) (same). If the plaintiff proceeds in this lawsuit, he cannot obtain injunctive relief against Waukesha County Jail or Dodge County Detention Facility officials.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **DENIES AS MOOT** the plaintiff's motion for an extension of time to pay the initial partial filing fee. Dkt. No. 13.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive* it by the end of the day on **December 9, 2022**. If the court receives an amended complaint by the above deadline, the court will screen it as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the deadline, or if the amended complaint again seeks to proceed on numerous, unrelated claims against different defendants, the court will allow the plaintiff to proceed only on his retaliation claim against officials at Dodge County Detention Facility and will dismiss all other defendants and claims.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$331.53** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the warden at USP McCreary.

The court **ORDERS** that the plaintiff must submit the original document for each filing to the court to the following address:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 31st day of October, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**